UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA DIANA NARVAIZ,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>　　　　Defendant. | No. 1:18-cv-01591-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF** |

**I.　　Introduction**

Plaintiff Maria Diana Narvaiz ("Plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1] *See* Docs. 15, 20 and 21. Having reviewed the record as a whole, the Court finds that the ALJ's decision is supported by substantial evidence and applicable law. Accordingly, Plaintiff's appeal is denied.

///

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 9 and 11.

1

**II.     Procedural Background**

On December 30, 2013, Plaintiff filed an application for supplemental security income alleging disability beginning February 3, 2013.  AR 32.  The Commissioner denied the application initially on April 9, 2014, and following reconsideration on October 9, 2014.  AR 32.

On November 6, 2014, Plaintiff filed a request for a hearing.  AR 32.  Administrative Law Judge Sharon L. Madsen presided over an administrative hearing on August 11, 2016.  AR 46-71.  Plaintiff appeared and was represented by an attorney.  AR 46.  On November 9, 2016, the ALJ denied Plaintiff's application.  AR 32-41.

The Appeals Council denied review on February 1, 2018.  AR 7-9.  On November 19, 2018,  Plaintiff filed a complaint in this Court.  Doc. 1.

**III.     Factual Background**

     **A.     Plaintiff's Allegations**

          **1.  Hearing Testimony**

Plaintiff (born June 1, 1967) lived with her son and his family.  AR 50.  She was able to perform her own personal care, shop, help out with cleaning, cook and do dishes.  AR 52.  She assisted in the care of her 19-month-old twin grandchildren.  AR 52.  Plaintiff did not drive and relied on family members for rides.  AR 51.

Plaintiff had a GED and completed some college courses.  AR 51.  Her prior work included basic care of disabled patients, including bathing, feeding and laundry; basic housekeeping and breakfast service at a local inn; and, part-time work in a minimart.  AR 53-54.

Plaintiff described constant cramping and aching in her neck with pain radiating to her left arm.  AR 55.  Her symptoms were worsening with age.  AR 64.  Her left arm was completely numb.  AR 55.  Sitting was uncomfortable.  AR 56.  She was most comfortable reclining with support under her neck and her feet elevated.  AR 56.  Plaintiff had developed arthritis in her shoulder, which she described as feeling like burns and shocks.  AR 57.  Walking caused back pain.  AR 58.  Although her doctor had recommended stretching, Plaintiff did not think she could do that.  AR 58.  She depended on Baclofen (a muscle relaxer), Norco (pain reliever) and

///

Meloxicam (for arthritis) as well as nonprescription aspercreme. AR 58-59. Her blood pressure was stable with medication. AR 59.

Plaintiff could sit for twenty to thirty minutes. AR 60. She could walk to a store that was about a half block away. AR 60. She could carry a gallon of milk with her right arm but not with her left. AR 59. Raising her left arm over her head was painful. AR 61. Plaintiff had difficulty bending over. AR 60.

Since the 2015 murder of her youngest son, Plaintiff experienced depression and anxiety. AR 62. However, she had recently found it easier to sleep and did not need medication as much. AR 63.

### 2. Pain Questionnaire

In March 2014, Plaintiff completed a pain questionnaire. AR 221-24. Plaintiff reported that she had experienced pain in her neck, shoulders, upper back and upper extremities since April 1986. AR 221. Rest usually relieved the pain in 30 to 45 minutes. AR 221. Plaintiff used two prescription drugs, Meloxicam and Tramadol, which relieved her pain in 40 to 60 minutes. AR 221. Side effects included drowsiness, dry mouth, diarrhea and sweating. AR 223. Warm packs were also helpful. AR 223.

Plaintiff was able to run errands without assistance. AR 224. She could walk four to five blocks, stand one and half to two hours, and sit for one hour at a time. AR 224.

### B. Medical Records

From July 2013 to July 2016, Plaintiff received regular medical care from Debra Martin, FNP, at Family Healthcare Network.[2] AR 245-67, 269-71, 282-293, 307-12, 335-43, 349-83, 387-92, 396-403, 408-13, 417-37, 443-72. As of July 2016, Plaintiff's diagnoses included cervicalgia; dorsalgia; insomnia; essential (primary) hypertension; major depressive disorder, single episode, severe without psychotic features; other intervertebral disc degeneration, lumbosacral region; anxiety disorder, unspecified; cervical disc disorder with myelopathy, unspecified cervical region; pain in unspecified shoulder; and, pain in left knee. AR 350.

---

[2] Plaintiff also received gynecological care unrelated to her disability claim from Shirley Neal Parker, M.D. AR 344-48.

Medications included Meloxicam (dorsalgia), Ambien (insomnia), Losartan Potassium (hypertension), Paroxetine HCl (depression), Norco (cervical disc disorder) and Baclofen (muscle spasm). AR 350-51.

Imaging studies were conducted on April 21, 2014, to address Plaintiff's backaches. AR 269-71. Lumbar spine x-rays revealed no fracture or malalignment and mild spondylosis at L3-4 and L4-5 with mild endplate osteophytosis, but no significant intervertebral disc height loss. AR 269. X-rays of Plaintiff's right shoulder revealed mild acromioclavicular degenerative changes but a normal glenohumeral joint and no fracture or dislocation. AR 270. Thoracic spine x-rays were normal except for mild multilevel bony upper trophic spurring at the intervertebral disc margins, consistent with mild chronic osteoarthritis. AR 271.

Daniel Brubaker, D.O., of Muscular Skeletal Medical Associates, issued a "Physician Statement and Recommendation" for medical marijuana on May 27, 2014. AR 276.

Plaintiff was evaluated for physical therapy at Sierra View District Hospital in May 2015. AR 323-27. Adriene Aono, PT, DPT, described Plaintiff as a "tough case: s/p fusion with lots of referred pain still and adaptive shortening of soft tissue around upper quadrants on both sides. Reflexes diminished but not absent on the left. Prognosis is fair. Reasonable candidate for desensitization and strengthening if she can tolerate it." AR 327. Plaintiff did not participate in physical therapy after the evaluation. AR 439.

Magnetic resonance imaging of Plaintiff's cervical spine in August 2015 revealed (1) surgical changes of C4-6 bony fusion with diskectomies; (2) a focal lesion at C5-6 consistent with myelomalacia, likely related to Plaintiff's upper extremity radiculopathy and possibly chronic; and, (3) mild/moderate degenerative disk changes, central canal stenosis and foraminal narrowing at C3-4 and C6-7, of questionable significance. AR 319-20.

In 2015, Plaintiff received counseling from psychologist Gwen Angert, Psy.D., to address relationship issues and grief following the murder of her son in January 2015. AR 384-86, 393, 404-07, 414-16. Plaintiff was compliant with depression and anti-anxiety medication (Paroxetine HCl), which she reported was effective. AR 384, 393, 404.

///

In 2016, neurosurgeon Majid Rahimifar, M.D., conducted a neurosurgical consultation regarding Plaintiff's cervical myelopathy. AR 330-33. In January 2016, Dr. Rahimifar diagnosed (1) chronic neck pain with left arm weakness and numbness since cervical spine surgery in 1986 and (2) chronic low back pain, localized. AR 333. The doctor requested that Plaintiff return with her MRI studies and recommended continued conservative treatment and avoidance of falls and heavy lifting. AR 333. Plaintiff returned in July complaining of calf pain in her right leg. AR 330. Dr. Rahimifar recommended an ultrasound study to rule out DVT. AR 330.

In August 2016, Kaveh Saremi, M.D., performed EMG studies. AR 474-77. The findings were consistent with chronic mild left C7 radiculopathy. AR 474.

### IV. Standard of Review

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks omitted).

If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

## V. The Disability Standard

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f).

## VI. Summary of the ALJ's Decision

The Administrative Law Judge found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 30, 2013. AR 34. Her severe impairments included: cervical degenerative disc disease status post fusion and discectomies at C4-5 and C5-6 with mild C7 left sided radiculopathy; mild lumbar spondylosis; mild thoracic degenerative joint disease; mild degenerative joint disease of the right shoulder; and obesity. AR 34. None of the severe impairments met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926). AR 35.

The ALJ concluded that Plaintiff had the residual functional capacity to perform a range of light work. AR 36. Plaintiff could lift, carry push and pull 20 pounds occasionally and 10 pounds frequently, and could sit, stand and walk six hours in an eight-hour workday. AR 36. She could occasionally stoop, crouch, crawl; climb ladders, ropes or scaffolds; reach overhead bilaterally; and grip, grasp, finger and feel with the upper left extremity. AR 36. Plaintiff could not tolerate static neck positioning. AR 36.

Plaintiff was unable to perform her past relevant work. AR 39. However, considering Plaintiff's age, education, work experience and residual functional capacity jobs that she could perform existed in significant numbers in the national economy. AR 40. Accordingly, the ALJ found that Plaintiff was not disabled at any time from December 30, 2013, the alleged onset date, through November 9, 2016, the date of the decision. AR 41.

### VII. Sufficient Evidence Supported the ALJ's Determination

Plaintiff contends that the determination of Plaintiff's residual functional capacity was not supported by sufficient evidence and that the ALJ erred in failing to adopt the opinions of her "treating provider," Ms. Martin, and the examining physician, Dr. Fabella.. The Commissioner disagrees, contending that the ALJ appropriately reached her determination after carefully assessing the physicians' opinions in light of objective evidence in the record. The Court agrees with the Commissioner.

#### A. Medical Opinions

##### 1. Agency Physicians

On initial review, R. Fast, M.D., opined that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently, and sit, stand or walk six hours in an eight-hour workday. AR 76-77. On reconsideration, A. Nasrabadi, M.D., agreed. AR 86.

##### 2. Consultative Examination: Internal Medicine

Internist Emmanuel Fabella, M.D., conducted a consultative consultation on September 2, 2014. AR 296-301. Plaintiff had experienced neck and back pain since a motor vehicle accident 28 years before, which had been followed by collar bone and back surgery. AR 296, 297. She experienced pain when she walked more than two blocks, bent, lifted even moderate weights, or

did household chores such as dishwashing and vacuuming. AR 296. She had frequent sharp pain radiating into her left arm, which was otherwise numb, and sharp pain in the upper trapezius area when lying in bed. AR 296. Plaintiff provided childcare for her grandchildren. AR 297.

The results of the examination were generally normal. AR297-99. Vision was corrected to 20/25. AR 298. Range of motion in her neck was reduced to 45 degrees for lateral flexion and rotation. AR 298. Examination of Plaintiff's back showed no spinal or paraspinal tenderness but there was moderate paralumbar muscle spasm. AR 299. The straight leg raising test was negative. AR 299. Forward flexion was reduced to 45 degrees. AR 299. Strength was reduced in Plaintiff's left hand. AR 298. Dr. Fabella diagnosed (1) cervicalgia with left radiculopathy; (2) low back pain with reduced range of motion, no evidence of neurologic compromise, aggravated by sitting, consistent with degenerative disc disease; and, (3) right upper trapezius pain probably secondary to muscle strain. AR 300.

Dr. Fabella opined that Plaintiff could lift and carry ten pounds frequently and occasionally with her right arm, but less than ten pounds frequently and occasionally with her left arm. AR 300. Gross manipulation with her left hand was mildly impaired. AR 300. She could stand and walk four hours or less in an eight-hour workday and required no assistive device. AR 300. She was able to walk on uneven terrain, climb ladders and work at heights. AR 300. Plaintiff was occasionally able to climb, balance, kneel and crawl. AR 300. She would need a break from sitting every 20 to 30 minutes. AR 300.

### 3. **Physical Medical Source Statement**

On July 15, 2015, Nurse Martin completed a physical medical source statement using a form apparently provided by Plaintiff's attorney. AR 314-17. Ms. Martin diagnosed "cervical laminectomy syndrome, degenerative discs, spondylosis, lumbar spine, lumbago and left cervical spine extremity radiculopathy, " affected by depression and anxiety. AR 314, 315. Plaintiff experienced constant severe neck pain radiating to her left shoulder and hand. AR 314. About three days weekly, Plaintiff also experienced severe low back pain. AR 314.

Plaintiff could lift less than ten pounds rarely. AR 316. She could walk one block. AR 315. She could sit or stand less than two hours in an eight hour workday but could not sit or stand

8

for more than 20 minutes at a time. AR 315. Plaintiff needed to be able to change position and walk for twenty minutes every twenty minutes. AR 315. She would require twenty minute breaks every twenty minutes. AR 315. Plaintiff could occasionally climb stairs; rarely twist or stoop; and, never crouch/squat or climb ladders. AR 316. Gross and fine hand movements, extending the arms and reaching overhead were limited. AR 316. Plaintiff's legs should be elevated ninety degrees for eighty per cent of the work day. AR 316.

Plaintiff was likely to be off task about 25 percent of the workday and was incapable of even low stress work. AR 317. She was likely to miss more than four work days monthly. AR 317.

### B. Determining Residual Functional Capacity

"Residual functional capacity is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p. The residual functional capacity assessment considers only functional limitations and restrictions which result from an individual's medically determinable impairment or combination of impairments. SSR 96-8p.

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). In doing so the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins*, 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and

making findings." *Magallanes*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

The opinions of treating physicians, examining physicians, and non-examining physicians are entitled to varying weight in residual functional capacity determinations. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a non-examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating professional may be rejected for "specific and legitimate" reasons. *Id.* at 830. However, the opinions of a treating or examining physician are "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

Nurse practitioners are not evaluated as if they were physicians. A nurse practitioner is not considered an acceptable medical source under 20 C.F.R. § 416.913.[3] Instead, nurse practitioners are considered to be other sources. 20 C.F.R. § 416.913(d)(1) (listing medical sources that are considered other sources, including nurse practitioners, physicians assistants, naturopaths, chiropractors, audiologists, and therapists). Unlike the opinions of physicians, the opinions of nurse practitioners are not entitled to special weight. An ALJ may reject the opinions of other sources by giving "reasons germane to each witness for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1224 (9th Cir. 2010). Factors used to evaluate a nurse practitioner's opinion include: (1) examining relationship; (2) length of treatment relationship and frequency of examination; (3) supportability

///

---

[3] The Social Security Administration has recently adopted new rules applicable to claims filed after March 27, 2017, which expand the category of acceptable medical providers to include, among others, nurse practitioners. 20 C.F.R. §§ 404.1502(a)(6), (7), (8); 416.902(a)(6), (7), (8) (2017); Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017). These revisions do not apply to Plaintiff's claim, which was filed December 30, 2013.

of opinion; (4) consistency with the record; (5) specialization; and (6) other factors supporting or contradicting the opinion. 20 C.F.R. § 416.927 (c) and (f)(1).

### C. The ALJ Properly Analyzed Evidence in the Record as a Whole

"[A]n ALJ is responsible for determining credibility and resolving conflicts in medical testimony." *Magallanes*, 881 F.2d at 750. An ALJ may choose to give more weight to opinions that are more consistent with the evidence in the record. 20 C.F.R. §§ 404.1527(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion").

In the course of her assessment of the medical opinions in this case, the ALJ stated that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." AR 39. The ALJ explained:

> While I find the claimant's description of back and neck pain is not totally at odds with the objective record, I conclude that these symptoms do not preclude the claimant from performing jobs available in the economy. AR 39. I have accommodated these symptoms in the residual functional capacity above. Even accounting for these limitations, there are jobs available in the national economy that the claimant could perform.

AR 39.

The ALJ observed that records of Plaintiff's medical treatment largely consisted of appointments with a nurse practitioner for routine medication refills who consistently noted the effectiveness of the medication regimen, with which Plaintiff consistently complied. AR 389. The ALJ also noted the inconsistency of Plaintiff's reports to Dr. Nasrabadi that her neck and back pain prevented her working while at the same time she was working as the child care provider for her grandchildren. AR 38.

The ALJ noted other evidence that was inconsistent with Plaintiff's claim of disability. Plaintiff reported that her medication relieved the widespread pain in her neck, back, shoulders, legs and knees. AR 36, 37. She could bathe and dress independently, walk four or five blocks and stand for up to two hours at a time. AR 36. She could carry a gallon of milk. AR 37. Plaintiff shopped and ran her own errands and did not need help to perform light housekeeping,

including cooking, washing dishes and laundry, and yardwork. AR 36-37, 39. In September 2015, Plaintiff complained of injuring a finger when picking up a heavy garbage can. AR 39. The ALJ acknowledged that Plaintiff received continuing treatment for the aftereffects of her 1986 injuries, but noted that treatment records indicated that medication controlled Plaintiff's pain and that Plaintiff responded well to treatment. AR 37. The ALJ also acknowledged that Plaintiff's obesity further limited her ability to work by limiting Plaintiff's exertional activities and affecting her ability to perform postural activities. AR 37. These factors were considered in the ALJ's decision that Plaintiff was capable of performing light work with restrictions. AR 37.

The ALJ gave moderate weight to the opinions of the agency physicians, Drs. Fast and Nasrabadi, and the consultative examiner, Dr. Fabella. AR 37-38. She noted that Dr. Nasrabadi had reviewed the opinions of Drs. Fast and Fabella, agreeing with Dr. Fast's assessment of Plaintiff's residual functional capacity and emphasizing that Dr. Nasrabadi reported that Plaintiff's gait was normal and straight leg raises were negative. AR 38. The ALJ explained her weighting of the doctors' opinions:

> I agree with the manipulative and postural restrictions that Dr. Fabella identified, but otherwise find the opinion overly generous. On the other hand, the opinions from Dr. Fast and Dr. Nasrabadi do not accord appropriate deference to the claimant's subjective complaints of pain. Thus, I conclude that lifting restrictions commensurate with work at the light exertional level and a provision for occasional overhead reaching are reasonable. In light of electrodiagnostic studies showing mild left C7 radiculopathy, I conclude that the claimant can perform occasional gross and fine manipulative activities with the non-dominant left upper extremity.

AR 38.

The ALJ rejected the extreme and internally contradictory restrictions set forth in Ms. Martin's statement:

> I give no weight to the Physical Medical Source Statement that Debra Martin, FNP-C completed in July 2015, indicating that Plaintiff was capable of no more than an extremely limited range of sedentary work. This checklist-style form appears to have been completed as an accommodation to the claimant in her pursuit of disability benefits, and includes only conclusions regarding functional limitations without meaningful rationale for those conclusions. The responses on the check-box form are at odds with Ms. Martin's treatment notes that consistently indicated that claimant's response to medication was "good." I also find noteworthy that Ms. Martin

> indicated that the claimant did not experience side effects from medications. Furthermore, the regulations at 20 CFR 416.913(a) list acceptable medical sources and medical reports which establish impairments. As a nurse practitioner, Ms. Martin is not an acceptable medical source and this opinion, standing alone, cannot constitute documentation of severe or disabling vocational limitations (Social Security Ruling 06-3p).

AR 38 (citations to administrative exhibits omitted).

"[A]n ALJ is responsible for determining credibility and resolving conflicts in medical testimony." *Magallanes*, 881 F.2d at 750. He properly determines the weight to be given each medical opinion by considering the evidence in the record as the ALJ did here. 20 C.F.R. § 404.1527(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion"). The record must include objective evidence to support the medical opinion of the claimant's residual functional capacity. *Meanel v. Apfel*, 172 F.3d 1111, 1113-14 (9th Cir. 1999). Inconsistencies with the overall record or with a physician's own notes are a valid basis to reject a medical opinion. *Molina*, 674 F.3d at 1111-1112 (recognizing that a conflict with treatment notes is a germane reason to reject a treating physician's assistant's opinion); *Connett v. Barnhart,* 340 F.3d 871, 875 (9th Cir. 2003) (rejecting physician's opinion when treatment notes provide no basis for the opined functional restrictions); *Tommasetti*, 533 F.3d at 1041 (incongruity between questionnaire responses and the Plaintiff's medical records is a specific and legitimate reason for rejecting an opinion); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692-693 (9th Cir. 2009) (holding that a conflict with treatment notes is a specific and legitimate reason to reject a treating physician's opinion).

The Court is not required to accept Plaintiff's characterization of her treatment records. The ALJ fully supported her determination based on multiple medical opinions and the evidence of record. Even if this Court were to accept that the record could support Plaintiff's contention, the record amply supports the ALJ's interpretation as well. When the evidence could arguably support two interpretations, the Court may not substitute its judgment for that of the Commissioner. *Jamerson*, 112 F.3d at 1066.

///

///

## X. Conclusion and Order

Based on the foregoing, the Court finds that the ALJ's decision that Plaintiff is not disabled is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of Court is directed to enter judgment in favor of Defendant Andrew Saul, Commissioner of Social Security, and against Plaintiff Maria Diana Narvaiz.

IT IS SO ORDERED.

Dated: **January 8, 2020**         /s/ Gary S. Austin
                                  UNITED STATES MAGISTRATE JUDGE